that the declaration should set out a good and sufficient cause of action, to be judged of by the court.

There is no such cause of action set out in this declaration. If in any case a decree in chancery, could be enforced by an action at law, within the territorial jurisdiction of the court of chancery, this is not such a case. The declaration professes to be founded on a decree in chancery, for the payment of money, and sets out certain mutilated proceedings in chancery, which show no such decree, nor whether there ever was a final decree in the case. It does not therefore set out a good and sufficient cause of action, but is bad upon the face of it, for want of a sufficient cause of action being stated. But it has been decided by this court, that an action at law will not lie to enforce a decree in chancery, within the territorial jurisdiction of the Chancery Court. And if the declaration did well, and sufficiently set out, a regular and final decree of the Court of Chancery of this State, for the payment of money, the action could not be sustained.

JUDGMENT REVERSED.

CHRISTOPHER HUGHES *vs.* ELIZABETH YOUNG.—*December*, 1832.

In 1780, R demised to L a tract of land for ninety-nine years, at a certain annual rent, and covenanted to renew the lease upon the payment of a year's rent, as a fine for other ninety-nine years, to commence from the expiration of the first term, and also that L should quietly enjoy the premises upon payment of the rent. The lease reserved the usual right to re-enter for non-payment of rent, but contained no agreement in relation to the payment of taxes. In an action of covenant brought upon this lease in 1828, it was HELD, that the taxes assessed upon, and chargeable against the demised premises, were due from, and payable by the lessee or his assigns, and that he could not set-off a payment of taxes, against a claim for rent.

APPEAL from *Baltimore* County Court.

This was an action of *Covenant*, commenced by the appellee against the appellant, on the 1st of September, 1828, on an indenture of lease; the plaintiff being the heir at law of the lessor, and the defendant the assignee of lessee.

The following statement of facts was submitted for the opinion of the court.

It is agreed between the parties in this case, that, on the 5th day of August, 1780, the following lease was executed, by and between the parties thereto. "This indenture, made this 5th of August, 1780, between *Charles Ridgely*, of *John*, of, &c. of the one part, and *James Lyston*, of, &c. of the other part; witnesseth, that the aforesaid *C. R.* in consideration of the rents and performance of the covenants hereinafter mentioned, on the part of the said *J. L.*, and his assigns, to be paid and performed, hath demised, &c. and by these presents doth demise, &c. unto the said *J. L.* all that lot of ground, being part of a tract of land called *Howard's Timber Neck*, lying in the county aforesaid, and beginning for the part now demised, at the beginning of *Jesse Hollingsworth's* lot, and running thence, &c. containing six acres and one quarter of land; together with all the improvements, ways, roads, waters, water courses, privileges, easements, and advantages, to the said parcel of land belonging, or in anywise appertaining, to have and to hold the said land and premises, with their and every of their appurtenances, unto the said *J. L.*, his executors, administrators and assigns, from the 1st of January, then last, until the full end or term of *ninety-nine years*, from thence next ensuing, fully to be completed and ended; paying therefor, yearly to the said *C. R.*, his heirs, &c., the rent of twelve pounds, twelve shillings, sterling money; and if it shall happen that the said yearly rent shall be in arrears and unpaid for the space of ninety days, next after the term on which the same is above reserved to be paid, the same being first lawfully demanded, that then it shall and may be lawful, to and for

the said *C. R.*, his heirs or assigns, into the said demised premises, or any part thereof, in the name of the whole, to reenter, and the same to have again, repossess, occupy, and enjoy, as in his or their former estate, until all such arrearages of rent, with legal interest therefor, and all and every cost, charge, and expense incurred by the said *C. R.* his heirs or assigns, by reason of the non-payment of the said rent shall be fully satisfied and paid, or make distress therefor, at his or their option; and if it shall happen, that the said yearly rent, or sum of twelve pounds, twelve shillings, sterling money, or any part thereof, shall be in arrear and unpaid for the space of six months, next after the time on which the same is above reserved to be paid, the same being first lawfully demanded, that then it shall, and may be lawful, to and for the said *C. R.* his heirs and assigns, into the said demised premises, or any part thereof, in the name of the whole re-enter, and the same to have again, repossess, occupy, as in his and their former estate, and that then, and in such case, this indenture, and every clause, matter and thing therein contained, shall, from thenceforth be utterly void and of none effect; and the said *C. R.* for himself, his executors, administrators and assigns, doth covenant and agree, to and with the said *J. L.* his heirs and assigns, on the payment of the rent and performance of the covenants hereinbefore mentioned, and reserved on the part of the said *J. L.* and his assigns, to be paid and performed, shall and may peaceably and quietly have, hold and enjoy the above demised lands and premises with the appurtenances, for and during the aforesaid term of ninety-nine years, for which the same is above demised, without the trouble, interruption and disturbance of him the said *C. R.*, his heirs or assigns, or any other person or persons claiming any thing therein, by, from or under him, them or any of them, or by his or their means, privity, or procurement; and also that he the said *C. R.*, his heirs and assigns, at any time or times hereafter, during the continuance of this present demise, on the request, and at the proper cost and

charge of the said *L.*, his heirs or assigns, and on his and their paying, or tendering in payment the sum of twelve pounds twelve shillings, sterling money, as a fine therefor to the said *C. R.*, his heirs or assigns, make and execute, or cause *to be made and executed,* a new lease of the above demised lands and premises, for other ninety-nine years, to commence and take effect from and at the end of the term for which the same is above demised, subject to the same rents, and under the like covenants, clauses and agreements as are hereinbefore mentioned, so that this present demise may be renewable and renewed. In witness whereof, the parties have hereto set their hands, and affixed their seals, the day and year above written."

It is further agreed, that the plaintiff was, from before the 1st day of January, 1825, thenceforth, and at this time, is legally vested with all the right, title and interest in and to the premises in said lease described, which the said *C. R.* possessed, immediately after the execution of the said lease, and that the defendant was, before the said 1st day of January, 1825, thenceforth, and now is vested with all the right, title and interest, which the said *J. L.* had immediately after the execution of the said lease. It is also agreed, that the premises are wholly unimproved ; that the same have been, for the purpose of taxation, assessed *by the* proper authority at the sum of $448, which assessment is always *one-fifth* of the actual value of the property, when assessed. And further, that improvements on property are always assessed separately from the land itself. It is further agreed, that in regard to the premises in question, the defendant is the party in fact, against whom the taxes hereinafter mentioned, during the period alluded to, have been charged. It is admitted that there remains due and in arrear, the sum of $214, with an average interest from the 1st day of July, 1828, for rent stated and reserved in and by the lease aforesaid, to be payable thereby. And it is further admitted, that there has been paid by the defendant, for taxes assessed

upon the premises, since the 1st of January, 1825, the sum of $51 56, in equal, or nearly equal annual payments.— Upon the foregoing statement, the following questions are submitted to this court.

*First*, are the taxes assessed upon and chargeable against the premises aforesaid, due from, and payable by the plaintiff or the defendant.

*Second*, if the whole of the taxes is not payable by either party, what portion is payable by the plaintiff, and what portion for the defendant.

It is further agreed, that the court shall enter up judgment, either for the whole of the rent stated to be in arrear, or for such balance as shall, by them be decided to be due, according to their decision upon the foregoing question; it is finally agreed, that all errors in the pleadings be mutually released, and that either party, or both parties may appeal to the Court of Appeals.

On the preceding statement of facts, the County Court gave judgment for the whole amount of the plaintiff's claim, being $214, with interest from the 1st of July, 1828, and costs.

From this judgment, the defendant prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, and DORSEY, J.

*Walsh*, for the appellant.

The question is, whether the owner of the fee, or the tenant, the lessee, is liable for taxes levied on the demised premises. He contended that they were payable by the former, and if the tenant paid them, he could set them off in an action of covenant, brought by the landlord for his rent. *Woodfall's Land. and Tenant*, 275, 6, 7. Act of 1812, *ch.* 191, *sec.* 36. *Graham vs. Wade*, 16 *East.* 29. It is not said in the case stated, that the property in question, improved in value from the date of the lease, in 1780, to 1825. The assessment appears to been made upon the

unimproved land. In reference to the public, the tenant is no doubt responsible for the taxes; and being consequently obliged to pay them, the right to discount the amount from the landlord's rent, would seem to be clear.

*Williams* and *Johnson*, for the appellee.

1. This being a case stated, the court can *infer* nothing. The judgment must be according to the facts expressly alledged. *Hysinger vs. Baltzell*, 3 *Gill and Johns*. 158. And the question therefore is, has a lessee in any case of this kind, a right to deduct taxes paid by him, imposed for State, or local purposes, from the rent due his landlord.

It does not appear whether the taxes were imposed for State or city purposes; nor whether they were levied under the act of 1817, *ch*. 148, or the act of 1812, *ch*. 191. In regard to the taxes in virtue of the act of 1817, the lessor is never answerable, though he is for those imposed under the act of 1812; and as the statement does not say, under which of these laws the taxes in question were levied, the judgment must be affirmed. *Mayor and City Council vs. Chase*, 2 *Gill and Johns*. 376.

2. There is no obligation on the part of the landlord, to pay the whole amount of the taxes, either on the original, or appreciated value of the property. Even if there had been an express *covenant* by the landlord to pay taxes, still the tenant would be responsible for that portion, which accrued in consequence of an enhancement on the value of the property subsequent to the lease. The value of the property as ascertained by the lease, would be the measure of the landlord's responsibility. *Watson vs. Atkins*, 3 *Barn. and Ald*. 647. *Watson vs. Home*, 14 *Serg. and Low*. 45. The act of 1812, *ch*. 191, *sec*. 36. 1785, *ch*. 53, 1797, *ch*. 89, *sec*. 41. *Woodfall's Land. and Tent*. 276.

But upon such a lease as the present, the landlord is not liable for any portion of the taxes. The question arises upon the covenants of the defendant, and not those of the landlord, who only covenants for quiet enjoyment. This covenant then, is to be taken most strongly against the co-

venantor. *Woodfall*, 369. 1 *Wheat. Selw.* 376. *Wagner vs. White*, 4 *Harr. and Johns.* 564.

The convenant here is, that the lessee will pay a certain amount of rent annually to the landlord, and there is nothing in the contract to qualify this engagement, or to discharge the tenant *pro tanto*, if he is made to pay taxes to the government. Nothing but an express stipulation would entitle the plaintiff to deduct these taxes. *Fowler vs. Bott*, 6 *Massa Rep.* 63.

Leases like the present, are considered as sales of the property for the term, and the tenant is bound for all burdens which may be imposed on it during that period. If the taxes are reduced, he is relieved; if increased, he must bear the burthen. If the property enhances in value, he enjoys the advantage; if it depreciates, it is his loss.

If the landlord is liable for the taxes, then if they should be so increased as to exceed the amount of the rent, the latter would be entirely extinguished; which is a result, to which the court would not come, unless it was manifest that the parties intended to make a contract, from which such consequences might flow. No such stipulation is contained in the contract, and the court is called upon to interpolate it. If demised premises are destroyed by fire, the tenant is nevertheless bound for the rent, and the court cannot aid him; and if it is incompetent to do so in the case of a total destruction of the property, what pretence is there for the exercise of such a power, upon the ground of his being subjected to some additional burden. The same would be the case if a portion or even the whole of the premises should be condemned by the public, for public purposes. But the court, in this case, is not only called on to introduce a stipulation into the contract of the parties, throwing on the landlord a liability for taxes; but it is asked to say, that the contract intended, that he should pay taxes imposed by a particular act of assembly—the act of 1812.

The rule is, that the insertion of particular covenants, is an exclusion of all others; and consequently, as the land-

lord in this lease has convenanted for quiet enjoyment, and for further assurance, he is not by implication to be saddled with others.

This lease having been made in 1780, cannot be affected by the acts of 1785, and 1812, and is not to be construed with reference to their provisions.

In *England,* leases made prior to the statute in reference to the land tax, do not subject the landlord to the payment of such tax, when the lease itself is silent on that subject. Leases made *since* the statute, are differently expounded, because the judges suppose such leases are made with reference to the law. *Bradbury vs Wright,* 2 *Douglass,* 624. *Woodfall,* 276. In some cases, a covenant to renew, makes the lease renewable for ever, but there can be no doubt of the present being a perpetually renewable lease. 5 *Bro. P. Cases,* 519, 522. *Woodfall,* 146, 204.

*Walsh,* in reply.

In the absence of evidence to the contrary, the legal presumption is, that the tax was levied on the interest of the landlord. It cannot be inferred from the case stated, that the rent reserved, was exactly proportioned to that interest; and consequently, it cannot be known with certainty what the parties contemplated on the subject of the taxes. The rent may have been higher than it would otherwise have been, because of understanding at the time, that the landlord should pay the taxes. In the case stated, it is expressly said, that the property is unimproved, and as there is no distinction between improvements, resulting from natural or other causes, and improvements made by the tenant; it must be understood as meaning, that it was not improved in any way, or to any extent, and therefore, the taxes now in question, were levied on the original and unenhanced interest of the landlord.

The legal presumption is, that the taxes were imposed for the purposes of the State. *Woodfall,* 254. *Doug.* 614, 615.

It is said that the act of 1817, exempts the landlord from taxation. This is not so ; though for the purpose of facili- tating the collection of taxes, it authorises a resort to the occupier or his property. *Mayor and City Council of Balt. vs. Chase,* 2 *Gill and Johns.* 310, 381.

The question then is, whether taxes imposed for State purposes, and for the general good, are to be borne by the interest of one of the parties only, and the interest of the other is to be wholly exonerated.

No case can be found in which such a lease as the pre- sent has been adjudged to be renewable for ever, looking only to the covenants contained in it, and disregarding the acts of the parties. *Woodfall,* 146, 147. But be this as it may, it would seem a strange anomaly, that the interest of the landlord, distinct and palpable as it is, should be total- ly exempt from taxation, whilst that of the tenant is made to bear the whole burden of the government. The case in 14 *Serg. and Low.* 45, and all the cases cited on the other side, only show, that the landlord is not liable for taxes on the *im- proved* value of the property, and this because he does not enjoy the benefit of such improved value.

JUDGMENT AFFIRMED.

Hicks *vs.* Hicks and Norris.—*December,* 1832.

A mortgagee may become the purchaser of the equity redemption, if he does not make use of his incumbrance to influence the mortgagor to part with the estate for less than its real value.

Where the relation of mortgagor and mortgagee exists, and the latter pur- chases from the former his equity of redemption, worth from $2000 to $2500 for $1600, this is not such an inadequacy of price, as to induce a Court of Equity, in the absence of corroborative proof, to impeach the sale as unfair. It is a circumstance to be weighed in the consideration of the subject, but it is not, unsupported, to overbalance other facts indicating an honest negotiation between the parties.